United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Maria Negron, and others, Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 18-21797-Civ-Scola |
| ) | |
| Celebrity Cruises, Inc., Defendant. ) | |

**Order on Defendant's Motion to Dismiss**

This matter is before the Court on Defendant Celebrity Cruises, Inc.'s motion to dismiss (ECF No. 13). For the reasons set forth in this order, the Court **grants** the Defendant's motion (**ECF No. 13**).

**1. Background**

The Plaintiffs, Maria Negron, Victor Gonzalez-McFaline, Lizzette Gonzalez-Negron, and Miguel Gonzalez-Laugier sailed on the Defendant's ship, Celebrity Summit, on November 4, 2017. (Compl., ECF No. 1 at ¶ 9.) Four days into the seven-day cruise, Negron began to feel dizzy and ill while the ship was docked in Barbados. (*Id.* at ¶ 12.) Onboard medical personnel misdiagnosed Negron with heart attack, and disembarked all of the Plaintiffs. (*Id.* at ¶ 14.) Negron was transported to a local hospital, where she allegedly endured unreasonable wait times, discomfort, exposure to areas contaminated with Ebola, lack of food and drink, and limited communication and information about her condition. (*Id.* at ¶¶ 16-18.) Fortunately, Negron's CT scan results returned normal at approximately 3 p.m.; nevertheless, the Plaintiffs were not transported back to the ship until 4:45 p.m. (*Id.* at ¶¶ 19-20.) Upon their return to port, the Plaintiffs allege that the Defendant's personnel prevented them from re-boarding, and instead, entered their cabins, removed their belongings, and transported them to a hotel. (*Id.* at ¶¶ 21, 23, 26.) The Plaintiffs allege that they were confused, anxious, and left stranded in a foreign country without proper travel documents or necessary medications. (*Id.* at ¶¶ 30-35.) As a result, the Plaintiffs were prevented from enjoying the cruise for which they paid, they incurred unanticipated expenses, and sustained emotional and physical injuries. (*Id.* at ¶¶ 40-41.)

The Plaintiffs filed this suit against Celebrity Cruises, asserting claims for intentional infliction of emotional distress (Count 1), false imprisonment, breach of contract, and unjust enrichment. The Defendant has moved to dismiss the Plaintiffs' claim for intentional infliction of emotional distress. (Mot., ECF No. 13.)

## 2. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

## 3. Analysis

The parties agree that this matter is governed by maritime law. Courts sitting in admiralty typically look to the standards set out in the Restatement (Second) of Torts § 46 (1965) as well as state law to evaluate claims for intentional infliction of emotional distress ("IIED"). *See, e.g., Wallis v. Princess Cruises, Inc.,* 306 F.3d 827, 841 (9th Cir. 2002) (citations omitted) (noting that since there is no maritime law concerning IIED claims, courts regularly employ the Restatement (Second) of Torts to evaluate IIED claims in federal maritime cases); *Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1319 (M.D. Fla. 2002) (citing to both the Restatement (Second) of Torts and Florida state law in case asserting claim for IIED for tort that occurred on a cruise ship).

Section 46 of the Restatement (Second) of Torts states, in relevant part, that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." To state a claim for IIED under Florida law, a plaintiff must show: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct;

(3) that the conduct caused emotional distress; and (4) that the distress was severe. *Nettles v. City of Leesburg Police Dep't*, 415 F. App'x. 116 (11th Cir. 2010) (quoting *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990)). Here, Celebrity Cruises asserts that the Plaintiffs' allegations fail to rise to the level of outrageous conduct necessary to state a claim for IIED, and that the Plaintiffs' allegations of emotional distress are not sufficiently severe.

The Complaint alleges that Celebrity Cruises misdiagnosed Negron, and thereafter, failed repeatedly to consult with the Plaintiffs, or maintain them apprised of the determined course of action. In addition, the Plaintiffs allege that they were subjected to unacceptable risk and danger at the local hospital. When they were finally returned to port, the Plaintiffs were "held hostage" in the taxi while their belongings were gathered from their cabins without their permission, and they were finally forcefully disembarked, despite repeated requests to be permitted to re-board the cruise. The Complaint further alleges that the Plaintiffs were grossly mistreated, and as a result, they experienced anxiety, fear for their safety, and were "exposed to serious risk, discomfort, annoyance, uncertainty, submission, estrangement, restraint, deceit, danger, and un-comfortableness." (Compl., ECF No. 1 at ¶¶ 33, 40.)

However, the Defendant's alleged conduct fails to rise to the level of outrageousness required by the Restatement (Second) of Torts and Florida state law. "Outrageous" conduct is that which "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011). The Restatement and Florida courts have stated that:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Restatement (Second) of Torts, § 46, cmt. d; *Brown v. Zaveri*, 164 F. Supp. 2d 1354, 1362 (S.D. Fla. 2001) (Lenard, J.) (citations omitted).

Notably, the cause of action for IIED is "sparingly recognized by the Florida courts." *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998) (King, J.). A plaintiff alleging IIED faces an extremely high burden, as Florida courts have repeatedly found a wide spectrum of behavior insufficiently "outrageous." A brief survey of Florida and maritime cases addressing claims of IIED underscores this point. *See, e.g., Rubio*, 445 F. App'x at 175 (finding failure to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee

on black asphalt pavement in sun, resulting in second-degree burns to face and chest); *Wallis*, 306 F.3d at 842 (finding no outrageous conduct where crew member on cruise ship remarked in the plaintiff's hearing after her husband fell overboard that her husband was probably dead and that his body would be sucked under the ship, chopped up by the propellers, and would probably not be recovered); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (Moore, J.) (finding no outrageous conduct where crew members assaulted cruise passenger and prevented her from leaving her room for a period of time); *Vamper*, 14 F. Supp. at 1306-07 (finding no outrageous conduct where defendants fabricated reckless driving charge against plaintiff, called him the "n" word, threatened him with termination, and physically struck him on ankle); *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, (S.D. Fla. 2016) (Seitz, J.) (finding failure to allege sufficiently outrageous conduct where plaintiff's child drowned in a pool advertised as "kid friendly," though lacking life guards, lifesaving equipment, and personnel prepared to respond to a drowning event).

Even construing the facts in the light most favorable to the Plaintiffs, the Defendant's alleged conduct is not such that it "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *See Rubio*, 445 F. App'x at 175. While the Plaintiffs' allegations describe distressing events, the allegations simply do not rise to the level of outrageousness required by the applicable case law.

### 4. Conclusion

Accordingly, the Court **grants** the Defendant's motion to dismiss (**ECF No. 13**) and **dismisses with prejudice** Count One of the Complaint.

**Done and ordered** at Miami, Florida, on July 9, 2018.

_____
Robert N. Scola, Jr.
United States District Judge