United States District Court
for the
Southern District of Florida

| Maria Negron, and others, Plaintiffs, | ) |
| --- | --- |
| | ) |
| v. | ) Civil Action No. 18-21797-Civ-Scola |
| | ) |
| Celebrity Cruises, Inc., Defendant. | ) |

**Opinion Order on Defendant's Motion to Dismiss**

This case arises out of a decision by Defendant Celebrity Cruises, Inc. to disembark an elderly passenger complaining of medical issues in Barbados for further testing and treatment at a local hospital, and then refusing to allow that passenger and her family to complete the cruise.

Now before the Court is the Defendant's motion to dismiss (ECF No. 32) certain claims asserted in the Amended Complaint (ECF No. 29). The Court **grants** the Defendant's motion (**ECF No. 32**) for the reasons that follow.

1. **Background**[1]

The Plaintiffs, Maria Negron ("Negron"), Victor Gonzalez ("Gonzalez"), Lizzette Gonzalez, and Miguel Gonzalez (collectively, "Plaintiffs") purchased a seven day cruise through the Eastern Caribbean aboard the Defendant's ship, Celebrity Summit, leaving on November 4, 2017, from San Juan, Puerto Rico. (Am. Compl., ECF No. 29 at ¶ 9, 10.) Four days in, Negron, who is 84 years old, began to feel dizzy and ill while the ship was docked in Barbados. (*Id.* at ¶¶ 1, 12.) Onboard medical personnel misdiagnosed Negron with a heart attack, and disembarked all of the Plaintiffs. (*Id.* at ¶ 14.) Paramedics then transported Negron to a local hospital for testing, including a CT scan. (*Id.* at ¶¶ 16, 17.) At the hospital, the "Plaintiffs were exposed to unreasonable waiting times to be attended, threatening environment, uncomfortable facilities, exposure to areas contaminated with Ebola, lack of food and drink, limited or imprecise information, and little communication as to Negron's condition and further development." (*Id.* at ¶ 18.)

Fortunately, the CT scan results returned normal and Negron "felt perfectly." (*Id.* at ¶¶ 19, 20.) So, the Plaintiffs requested to return to the ship to resume their cruise. (*Id.* at ¶ 20.) The Defendant, apparently, decided against

---

[1] The Court accepts as true the facts pled in the Amended Complaint. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

allowing Negron, an elderly passenger who had demonstrated an inability to withstand the physical rigor of a cruise, to continue for three more days on the high seas. As a result, the Plaintiffs were driven back to the port by taxi, at which point the Defendant's personnel prevented them from re-boarding and, instead, entered their cabins, packed and removed their belongings, and transported them to a hotel. (*Id.* at ¶¶ 21-26.) This, allegedly, caused the Plaintiffs to become confused and anxious, while also leaving them stranded in Barbados until Gonzalez obtained a temporary passport, as he boarded the cruise with an expired passport. (*Id.* at ¶¶ 30-35.) In addition, the Defendant's "personnel w[ere] not careful when packing the Plaintiffs' luggage," causing the Plaintiffs' medication to become "disorganized and lost throughout their belongings." (*Id.* at ¶ 36.)

Because of this, the Plaintiffs were deprived of the cruise for which they paid; incurred unanticipated expenses, including the cost of a plane ticket for Gonzalez to Miami (not the port of embarkation); and faced "annoy[ing]" questions from U.S. Customs about Gonzalez's temporary passport, among other complaints. (*Id.* at ¶¶ 37, 41, 42.) The Plaintiffs specify their damages as "severe psychological damages, emotional distress, much personal discomfort, uncertainty, fear and lack of safety," and "undue expenses and costs." (*Id.* at ¶ 47.) For their troubles, the Plaintiffs request $900,000.00. (*Id.* at ¶ 48.)

The Plaintiffs filed suit on May 4, 2018, for intentional infliction of emotional distress, false imprisonment, breach of contract, and unjust enrichment. (ECF No. 1.) The Defendant moved to dismiss the Plaintiffs' claim for intentional infliction of emotional distress, which the Court granted, dismissing that claim with prejudice. (ECF No. 13, 19.) The Plaintiffs then filed an amended complaint adding new claims for negligence ("Count I") and trespass ("Count V"). (ECF No. 29.) Now, the Defendant moves to dismiss those claims. (ECF No. 30.)

**2.  Legal Standard**

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

3. **Analysis**

The Defendant raises two arguments in the Motion: (1) that Count I is actually a claim for negligent infliction of emotional distress, and requires dismissal for failing to plausibly allege that the Plaintiffs were in the "zone of danger"; and (2) that the trespass claim should be dismissed because the Plaintiffs had no legal interest or ownership in their cruise cabin.

In opposition, the Plaintiffs do not dispute the Defendant's characterization of Count I, and argue: (1) that the Amended Complaint contains sufficient allegations of physical impact to sustain a claim for negligent infliction of emotional distress; (2) that, in the alternative, the Plaintiffs plausibly allege that they were placed in immediate risk of physical harm; and (3) that the Plaintiffs sufficiently allege a legally protected interest in their cabin and thus state a claim for trespass.

The parties agree that this matter is governed by maritime law. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012) (applying federal maritime law to negligence claim arising from cruise line's conduct during land-based excursion).

A. **The Plaintiffs Cannot Recover for Emotional Harm**

To begin, the Court agrees with the Defendant that the Plaintiffs' negligence claim is, in fact, one for negligent infliction of emotional distress. The Plaintiffs do not specify any physical harm for which they seek recovery under this claim. Rather, the Plaintiffs ask for "severe emotional distress" and "mental anguish" damages allegedly resulting from the negligent conduct of the Defendant. (ECF No. 29 at ¶ 53.) That is a claim for negligent infliction of emotional distress. *Chaparro*, 693 F.3d at 1337-38 (a claim for negligent infliction of emotional distress "requires 'mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not

directly brought about by a physical injury, but that may manifest itself in physical symptoms.'" (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994))); *cf. id.* at 1337 (holding that negligence claim was sufficiently pled where the plaintiff was alleged to have "suffered various damages, including the loss of Liz Marie's life.").

Properly understood, Count I must be dismissed. Under federal maritime law, a plaintiff seeking recovery for emotional harm due to the negligent acts of another must satisfy "the 'zone of danger' test." *Id.* at 1338. That doctrine bars recovery for negligently inflicted emotional harm unless the plaintiff (i) "sustains a physical impact as a result of" the negligent act of a defendant, or (ii) is otherwise "placed in immediate risk of physical harm by" that conduct. *Id.* (quoting *Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010)); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1354 (S.D. Fla. 2008) (Moore, J.) (quoting *Gottshall*, 512 U.S. at 547-48 (holding that "those within the zone of danger can recover for fright, and those outside of it cannot.")).

First, there are no plausible allegations that the Plaintiffs sustained a "physical impact" from the Defendant's allegedly negligent conduct. In their response brief, the Plaintiffs suggest the opposite due to their: (i) difficulty locating medications in their luggage as a result to the Defendant's method of packing same; (ii) admission to a hospital in Barbados where other patients were treated for ebola; and (iii) wait in a taxi outside the cruise ship while the Defendant packed the Plaintiffs' belongings. (ECF No. 32 at p. 4.) But "the words 'physical impact' do not encompass every form of 'physical contact'" and, "in particular, they do not include a contact that amounts to no more than an exposure." *Martins v. Royal Caribbean Cruises Ltd.*, 216 F. Supp. 3d 1347, 1372 (S.D. Fla. 2016) (Goodman, Mag. J.) (citing *Metro-N. Commuter R. Co. v. Buckley*, 117 S. Ct. 2113, 2118 (1997)). Thus, to constitute a "physical impact" under the first and second theories, above, the Plaintiffs must plausibly allege that they actually contracted ebola or suffered a physical injury from their inability to locate medicine within their suitcases. *See id.* at 1372-73 (holding that "the 'physical impact' test is limited to circumstances where the emotional distress derives from an actual physical injury," and rejecting argument that a plaintiff suffered a physical impact through contact with an individual with *Salmonellosis*, where plaintiff did not contract disease); *Buckley*, 117 S. Ct. at 2118-19 (holding similarly and rejecting an "expansive definition of 'physical contact'"). They have not. Nor have the Plaintiffs factually alleged that they suffered "actual physical injury" from their time in the taxi, and that theory cannot support the negligence claim either. *Martins*, 216 F. Supp. 3d at 1372-73.

And any suggestion that the Plaintiffs' claimed emotional damages resulted from an "immediate risk of physical harm" is legally implausible given the complete absence of allegations of a "physical manifestation" of such an injury. *Compare* (ECF No. 29 at ¶ 40 ("Upon their return to Puerto Rico, Negron was thoroughly examined by local physicians, obtaining a clean bill of health with no traces of a heart attack or similar situation that could put her health or life at risk")), *with Martins*, 216 F. Supp. 3d at 1371-72 (holding that "a plaintiff seeking to recover for negligent infliction of emotional distress under the second method of meeting the zone of danger test (i.e., when there is no physical impact) is required to *also* demonstrate an objective physical manifestation of the alleged emotional injury"), *and Tassinari v. Key West Water Tours, L.C.*, 480 F. Supp. 2d 1318 (S.D. Fla. 2007) (Moore, J.) (holding the same, and noting the rule's "beneficial public policy of placing an objective and easily applied restriction on frivolous claims").

Perhaps the Defendant's cautiousness deprived the Plaintiffs of the benefit of their bargain. Maybe a ticket refund is in order. But the factual allegations of the Amended Complaint come nowhere close to stating a claim for emotional or psychological damages. Count I is **dismissed with prejudice**.

### B. The Plaintiffs Fail to State a Claim for Trespass

Count V, the trespass claim, is premised on the Defendant's entry into the Plaintiffs' assigned cabin to collect and deliver their belongings. (ECF No. 29 at ¶ 73.) In its motion, the Defendant argues that the Plaintiffs had no "property interest or legally protected interest" in their cabin and therefore fail to state a claim for trespass. (ECF No. 30 at p. 6.) The Court agrees.

"While no rule of trespass exists in maritime law, federal courts may borrow from a variety of sources in establishing common law admiralty rules to govern maritime liability where deemed appropriate." *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992). And courts look to the Restatement (Second) of Torts to determine the law of maritime trespass. *Id.*; *Stuart Cay Marina v. M/V Special Delivery*, 510 F. Supp. 2d 1063, 1074-75 (S.D. Fla. 2007) (Middlebrooks, J.) (applying Restatement 2d of Torts, § 158 to maritime trespass claim).

Section 158 defines the scope of liability in trespass claims for intentional intrusions on land:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally,
>
>> (a) enters land in the **possession** of another, or causes a thing or a third person to do so, or

> (b) remains on the land, or
>
> (c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (2d) of Torts, § 158 (emphasis added). "Possession" is defined as follows:

> a person who is in possession of land includes only one who
>
> (a) is in **occupancy** of land with intent to control it, or
>
> (b) has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other person has obtained possession as stated in Clause (a), or
>
> (c) has the right as against all persons to immediate occupancy of land, if no other person is in possession as stated in Clauses (a) and (b).

*Id.* at § 157 (emphasis added). Finally, "occupancy" under that section means "such acts done upon the land as manifest a claim of **exclusive control** of the land, and indicate to the public that he who has done them has appropriated it." *Id.* at Comment (a) (emphasis added); *see also* Restatement (2d) of Torts, Division One, Chapter Seven, Topic One, Scope Note (1965) (this chapter "deal[s] with invasions of the interest in the **exclusive** possession and physical condition of land").

So, to state a claim for trespass, the Plaintiffs must plausibly allege that they had the *exclusive* control or possession of their cruise ship cabin. They have not, and cannot.

Any possession the Plaintiffs had in the cruise cabin was not exclusive and, indeed, was expressly subordinate to that of the Defendant under the terms of the cruise ticket. To that end, the ticket, which the Plaintiffs attached to the Amended Complaint, provides that the Defendant may:

> search the stateroom, property or baggage of any Passenger, . . . disembark or refuse to embark the Passenger, . . . or restrain any Passenger at any time, without liability, at the risk and expense of the Passenger, when in the sole opinion of the Carrier or Captain the Passenger's conduct or presence . . . is believed to present a possible danger, security risk or be detrimental to himself or the health, welfare, comfort or enjoyment of others.

(ECF No. 29-1 at § 8(e).) There are no factual allegations that the Defendant's cabin entry was done for a purpose other than terminating the Plaintiffs' trip in an effort to avoid a medical emergency on the high seas involving Negron, an elderly passenger who presented to ship doctors as physically unfit for an open

ocean voyage. Indeed, no other inference may plausibly be drawn from the Amended Complaint. Thus, the Plaintiffs have not, and cannot, plausibly allege that their "possession" of the cabin was exclusive, and the Court **dismisses** Count V with prejudice.

**4.    Conclusion**

In sum, the Court **grants** the Defendant's motion to dismiss (ECF No. 30) and **dismisses** Count I and V of the Amended Complaint (ECF No. 29) with prejudice.

**Done and ordered** at Miami, Florida, on December 19, 2018.

_____
Robert N. Scola, Jr.
United States District Judge